UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Criminal Action No. 05-427 (GK) |
| ) | |
| DONALD BOONE, ) | **FILED** |
| ) | APR 15 2010 |
| Defendant. ) | |
| ) | Clerk, U.S. District & Bankruptcy Courts for the District of Columbia |

## MEMORANDUM OPINION

Defendant Donald Boone is charged in an indictment with two counts of Unlawful Distribution of 5 Grams or More of Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii). This matter is presently before the Court on Defendant's Motion to Dismiss Indictment Because Defendant Has Been Denied His Right to a Speedy Trial [Dkt. No. 7]. Upon consideration of the Motion, Opposition, Reply, and the entire record herein, and for the reasons set forth below, the Motion to Dismiss Indictment is **granted**.

I. **Background**

Defendant Boone allegedly engaged in sales of crack cocaine, which were recorded on audio and/or video tapes, to a Special Employee and an undercover officer of the Metropolitan Police Department ("MPD") on November 1 and November 8, 2005. A search warrant was executed on November 30, 2005 for a residence which Boone was observed entering to retrieve crack cocaine before the November 8, 2005 sale. Boone was not present in the residence at

(N)

the time the warrant was executed, although multiple other individuals were found there. A sealed bench warrant was issued for Defendant Boone's arrest on November 29, 2005, and a grand jury returned an indictment under seal on December 1, 2005.

At the time of his indictment, Defendant Boone was on parole for a 1995 conviction for Unlawful Possession with Intent to Distribute Cocaine in the Superior Court of the District of Columbia, Case No. 1995-FEL-2285. Boone last spoke to his parole officer, Dwayne Murray, on December 19, 2005. Because Murray was unaware of the warrant for Boone's arrest, it was not discussed. Boone did acknowledge to Murray that he knew that MPD was looking for him and that they had kicked in his grandmother's door, but stated that he did not know why. Boone also told Murray that he would go to the police after speaking with his lawyer, but never did so. After he failed to report for an office visit with Murray scheduled for December 29, 2005, Boone was deemed a "loss of contact," and a parole warrant was issued for his arrest on March 16, 2006.

The MPD's efforts to arrest Boone on the criminal arrest warrant consist of two acts of surveillance of Boone's grandmother's residence in December 2005, distribution of Boone's photograph to patrol officers in the Fifth District, and at least ten inquiries made to several confidential sources in the period between late 2005 and 2010. In addition, Officer Harry Allen

conducted surveillance "on multiple occasions" of the neighborhood in which Boone resided. Affidavit of Officer Harry Allen (Ex. A to Gov't's Opp'n). In the summer of 2008, Officer Allen conducted surveillance of a location in Maryland where a confidential source reportedly had seen Boone, but did not find him. Finally, in January 2010, a confidential source reported having seen Boone in the area of his grandmother's residence and, after conducting surveillance in the area, Officer Allen finally spotted and arrested Boone on February 15, 2010.

On March 26, 2010, Boone filed a Motion to Dismiss the Indictment, arguing that the more than four years of delay between his indictment and arrest violate his Sixth Amendment right to a speedy trial. The Government opposes the Motion on the grounds that any delay is attributable to Boone, and therefore that no such violation has occurred. All briefing was concluded by April 7, 2010, and the parties agreed that no evidentiary hearing is needed.

## II. Standard of Review

Excessive delay in prosecuting a defendant after he is indicted or arrested violates the Sixth Amendment right "[i]n all criminal prosecutions, . . . to a speedy . . . trial." U.S. Const. amend. VI. See Doggett v. United States, 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992) (eight-and-a-half year delay between indictment and arrest violated defendant's right to a speedy trial). In Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33

L.Ed.2d 101 (1972), the Supreme Court listed four factors to be assessed in speedy trial right claims: the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Our Court of Appeals has explained that "[n]one of the four factors is 'either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial'; 'rather, they are related factors and must be considered together with such other circumstances as may be relevant.'" United States v. Tchibassa, 452 F.3d 918, 923 (D.C. Cir. 2006) (quoting Barker, 407 U.S. at 533, 92 S.Ct. 2182) (brackets omitted).

The first factor--length of delay--involves a two-step inquiry. First, the accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from "presumptively prejudicial" delay to trigger the speedy trial analysis. Once the accused has made this showing, the court must consider the extent of delay, with the understanding that the presumed prejudice to the defendant intensifies over time. Dogget, 505 U.S. at 651.

The Court must also consider the reason the Government offers for the delay and assess whether the Government or the defendant is more to blame. Because "[a] defendant has no duty to bring himself to trial," however, the Government must at least pursue the defendant with "reasonable diligence," a standard that demands

"serious effort." Doggett, 505 U.S. at 656; Barker, 407 U.S. at 531.

Next, although a defendant's failure to demand his right to a speedy trial weighs against him, when a defendant is ignorant of his indictment, he "is not to be taxed for invoking his speedy trial claim only after his arrest." Doggett, 505 U.S. at 653-54. Finally, when the Government has negligently failed to pursue the defendant with reasonable diligence, prejudice may be presumed. Id. at 657-58. In addition, any particularized prejudice that the defendant can identify is also considered. Id.

### III. Analysis

In this case, the Government concedes that the four-year delay between Boone's indictment and arrest is "presumptively prejudicial". The Court agrees. See Gov't's Opp'n at 6; Doggett, 505 U.S. at 652 n.1 (noting that post-accusation delay approaching one year is generally presumptively prejudicial); United States v. Fernandes, 618 F.Supp.2d 62, 68 (D.D.C. 2009) ("A delay of more than one year is 'presumptively prejudicial' and triggers the four factor analysis."). The Court also finds that a four-year delay between indictment and arrest for a straightforward narcotics crime is a considerably lengthy delay that exceeds the "bare minimum" for "judicial examination of the claim." Doggett, 505 U.S. at 652. Thus, the first factor weighs in favor of Defendant.

In explaining the reason for delay, the Government argues that Boone knew that MPD was looking for him in order to arrest him, and that he made efforts to evade arrest. This argument is critical to the Barker analysis: if Boone consciously sought to evade arrest, not only would he be to blame for the delay, but his failure to invoke his speedy trial rights during the four-year period would also weigh against him.

The Government offers circumstantial evidence to establish that the undercover narcotics investigation, as well as the identity of MPD's Special Employee, became public knowledge in Boone's neighborhood around the time of his indictment. The Government's evidence shows that several other individuals involved in narcotics trafficking were arrested in late 2005, and that the residence that Boone used to sell drugs was searched by MPD five days after the November 25, 2005 sale. The Government also cites Boone's admission to his parole officer that he knew the police had kicked in his grandmother's door while looking for him, his subsequent loss of contact with his parole officer, and the fact that police efforts were unsuccessful in locating him during that time.[1]

---

[1] The Government also relies on the efforts of Dwayne Murray, Defendant Boone's parole officer, to locate Defendant in December 2005. Gov't's Opp'n at 7. After checking the NCIS and WALES databases in preparation for an office visit with Boone on December 6, 2005, Murray spoke with MPD officers "involved in the investigation of the defendant's pending narcotics case." Id. at 3. MPD did not inform Murray of the arrest warrant, but advised

Boone responds that he had no knowledge of the warrant for his arrest, and that since 2005 he has been living at his grandmother's house, which is only one half block from the place where Officer Allen eventually located and arrested him in 2010. Def.'s Reply at 3. Boone also alleges that the Government was fully aware of his residence at that location, since (1) his commercial driver's license, which was issued in 2004 and expired in 2007, was registered to that address; and (2) he received his Medicare disability benefits and bank statements at that address. MPD responds that it conducted surveillance of this residence "on at least two occasions" in December 2005, but admits that officers did

---

him that Boone "may be involved in narcotics trafficking" and that they wished to speak with him. Id. Murray informed Detective William Witkowski that Boone had a scheduled office visit on that same day--December 6, 2005--and Witkowski replied that he would call Murray back. However, Witkowski never contacted Murray. Defendant Boone did not attend the scheduled office visit.

    Later that month, Murray conducted a home visit to the address provided by Boone, which was not his grandmother's residence. Boone's mother was present at the address provided to Murray, and, after she told him that Boone was not present, Murray left instructions for Boone to report for an office visit on December 19, 2005. Boone failed to report on that date, although, as discussed above, he held a telephone conversation with Murray. After the December 19, 2005 telephone conversation with Boone, Murray mailed a certified letter to the above address instructing Boone to report for an office visit on December 29, 2005. Again, Boone failed to report. Id.

    The Government argues that these facts support the inference that Boone was actively seeking to evade arrest during this period. However, despite the fact that Boone was not very reliable in communicating with his parole officer, he had no legal obligation to turn himself over to the police when he had only been informed that MPD was "looking" for him and did not know an arrest warrant had been issued for him.

not return to the house in subsequent years or attempt to execute the arrest warrant at that location. Gov't's Opp'n at 2.

It is the Government's burden to establish the reason for delay. Jackson v. Ray, 390 F.3d 1254, 1261 n.3 (10th Cir. 2004) (noting that "every circuit court to address the question has held that Barker places the burden to explain the delay on the State" and collecting cases); Fernandes, 618 F.Supp.2d at 68, 72. While the Government's evidence is largely circumstantial, it does support the inference that Boone was at least aware of some kind of connection between MPD's investigation and his own criminal conduct.

However, the Government's evidence does not establish that Boone had specific knowledge that a warrant--which remained sealed throughout the four-year delay--had been issued for his arrest; indeed, the fact that the indictment remained sealed makes it somewhat less likely that Boone knew of its existence. The Government's evidence also fails to establish that Boone took any specific steps with the intent of evading arrest. Compare United States v. Brown, 169 F.3d 144 (6th Cir. 1999) (government failed to establish defendant's knowledge of indictment through evidence that defendant used aliases and fled from authorities), and Tchibassa, 452 F.3d at 923 (government established defendant's knowledge where record showed that defendant was informed of arrest warrant by Interpol agents); United States v. Aguirre, 994 F.2d 1454, 1456

(9th Cir. 1993) (evidence that defendant sought continuance of court appearance established his knowledge of pending charges).

Even if this Court were to conclude that there is evidence to establish that Boone sought to evade arrest, the majority of the blame lies with the Government for its failure to exercise reasonable diligence in arresting Boone. In <u>United States v. Reynolds</u>, 231 Fed.Appx. 629, 631 (9th Cir. 2007), the government was found not to have exercised reasonable diligence when it "only presented evidence of attempts to apprehend Reynolds during, at most, six of the total fifty-six months of delay. During the other fifty months, the most that can be said for the government is that the warrant for Reynolds's arrest was listed in the National Crime Information Center ("NCIC") database."[2]

Significantly, the arrest warrant issued in this case was apparently not entered into the NCIC or Washington Area Law Enforcement ("WALES") databases any time before January 30, 2006. The Government's evidence establishes that Murray, the Defendant's parole officer, found no outstanding warrants or detainers after checking the NCIC and WALES databases on December 6, 2005 and

---

[2] NCIC is the primary nationwide database used by law enforcement to determine whether any warrants have been issued for an individual's arrest. See <u>United States v. Erenas-Luna</u>, 560 F.3d 772, 775 n.2 (8th Cir. 2009). While entering a name into the database does not on its own satisfy the Government's reasonable diligence obligation, see <u>Fernandes</u>, 618 F.Supp.2d at 70, it is a routine step in alerting federal and state law enforcement officials to the existence of an outstanding warrant, thus facilitating prompt arrests.

January 30, 2006. See Alleged Violation(s) Report from Dwayne Murray, Community Supervision Officer, to the United States Parole Commission (Jan. 30, 2006) (Ex. B to Govt.'s Opp'n). Instead, the databases included a notation that two MPD officers wished to speak with Boone. The Government has not indicated whether the arrest warrant was ever entered into the databases after January 30, 2006.

Here, MPD relied chiefly on the efforts of one--and only one--police officer to locate Defendant. Apart from the two acts of surveillance in December 2005, Officer Allen's affirmative efforts to locate Boone from 2006-2010 were largely limited to broad surveillance of the neighborhood "on multiple occasions" and "at least ten" inquiries of confidential sources. In the summer of 2008, two and a half years after the indictment, Officer Allen reacted to a tip from a confidential source regarding Boone's whereabouts. It was not until nearly two more years had passed that another such tip finally led to Boone's arrest.

The Government has produced no evidence indicating that it put forth "serious effort" to find and arrest Boone, such as by conducting a stake-out of the residences associated with him. See Barker, 407 U.S. at 531. The Government fails to indicate what, if any, efforts were made to question the individuals arrested in November 2005 as a result of MPD's investigation to learn Boone's whereabouts. Similarly, the Government has produced no evidence that it reached out to government agencies or other institutions to

learn the address Boone was using to receive mail, which was sent to his grandmother's residence. See United States v. Akinsola, 57 F.Supp.2d 455 (E.D. Mich. 1999) (no reasonable diligence where government failed to contact other governmental agencies for defendant's updated address and defendant had applied for resident alien cards, driver's licenses, and Social Security Cards). Given these facts, and given the wide-ranging resources commanded by MPD, the Court cannot conclude that the Government was reasonably diligent in arresting Boone in the four years after his indictment.

With regard to the third factor, the defendant's assertion of his speedy trial right, the Government has failed to show that Boone knew about his indictment--which, it must be remembered, was sealed--before the February 2010 arrest. Mere awareness that the police are looking for a person does not obligate that person to affirmatively seek out the police to find out what, if any, problem exists. See Barker, 407 U.S. at 527, 92 S.Ct. at 2190 ("A defendant has no duty to bring himself to trial."); Dickey v. Florida, 398 U.S. 30, 50, 90 S.Ct. 1564, 1575 (1970); United States v. Molina-Solorio, 577 F.3d 300, 306 (5th Cir. 2009) ("[T]he law does not require [a defendant] to assume the existence of, and ask for a speedy trial on, a charge he is not actually aware of."). Thus, the third factor weighs in Boone's favor because he asserted this right shortly after his arrest. Doggett, 505 U.S. at 653-54.

Finally, the Government argues that "[g]iven the nature and strength of the government's evidence [which includes audio and video tapes of Boone selling crack cocaine], he cannot reasonably proffer facts demonstrating actual prejudice to his defense." Gov't's Opp'n at 10. The Supreme Court has identified three types of prejudice that may be caused by excessive delay: "oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the [accused's] defense will be impaired by dimming memories and loss of exculpatory evidence." Doggett, 505 U.S. at 654, 112 S.Ct. 2686. The last form of prejudice--impairment of the accused's defense--is the most serious, as well as the hardest to prove. Id. at 654-55 ("[E]xcessive delay presumptively compromises the reliability of a trial in many ways that neither party can prove or, for that matter, identify."); Fernandes, 618 F.Supp.2d at 72. As a result, prejudice is presumed in cases where the delay exceeds one year and the Government has failed to exercise reasonable diligence. In this case, defense counsel has already indicated the difficulties he will face in locating the individuals who were in the house where the search warrant was executed in 2005.

Here, the delay exceeded four years and, as discussed above, the Government failed to exercise reasonable diligence. Thus, prejudice is presumed, and there is no need for Boone to demonstrate actual prejudice to his defense. The Government has

offered no evidence to rebut this presumption, and thus the fourth factor also weighs in favor of Boone.

Because all four <u>Barker</u> factors weigh in Defendant's favor, the Motion to Dismiss Indictment is **granted**.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss Indictment is **granted**. An Order will accompany this Memorandum Opinion.

April 15, 2010

/s/ Gladys Kessler
Gladys Kessler
United States District Judge

<u>Copies to</u>: attorneys on record via ECF